IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


RICK ELLIOTT,                          )
                Plaintiff,         )
                         )
            v.              )            Civil Action No. 07-395
                         )
                         )
COMMISSIONER OF SOCIAL                 )
SECURITY,                              )
                Defendant.         )


REPORT AND RECOMMENDATION

I.      Recommendation

It is respectfully recommended that the plaintiff's motion for summary judgment (Docket No.7) be denied; that the defendant's motion for summary judgment (Docket No.10) be granted; that the decision of the Commissioner be affirmed and that judgment be entered accordingly.

II.     Report

Presently before the Court for disposition are cross motions for summary judgment.

On March 27, 2007, Rick Elliott, by his counsel, filed a complaint pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. §405(g) for review of the Commissioner's final determination disallowing his claim for a period of disability or for disability insurance benefits under Sections 216(i) and 223 of the Social Security Act, as amended, 42 U.S.C. §§416(i) and 423.

On August 28, 2004, the plaintiff filed an application for disability benefits alleging that he was disabled (R.62-65), and benefits were denied on October 22, 2004 (R. 39-40). On July 24, 2003 and November 10, 2004, the plaintiff requested a hearing (R.31-36, 44) and pursuant to

that request a hearing was held on September 8, 2005 (R.224-259.).  In a decision dated September 20, 2005, benefits were denied (R.12-25), and on November 25, 2005, reconsideration was requested (R.9).  Upon reconsideration and in a decision dated January 25, 2007, the Appeals Council  affirmed the prior determination (R.5-8). On March 27, 2007,  the instant complaint was filed.

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain his burden of demonstrating that he was disabled within the meaning of the Social Security Act.  Richardson v. Paralyze, 402 U.S. 389 (1971); Adorn v.  Halala, 40 F.3d 43 (3d Cir. 1994).

It is provided in 42 U.S.C. Section 405(g) that:

The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.  The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....

Substantial evidence is "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)." Richardson v. Paralyze, supra., at page 401; Plummer v. Apfel,  186 F.3d 422 (3d Cir. 1999).

At the hearing held on September 8, 2005, (R.224-259), the plaintiff appeared with counsel (R.226) and testified that he was born on October 6, 1953 (R.230); that he is a high school graduate (R.231); that he is married (R.230); that he drives three times a week (R.230);

that he worked as a steel mill laborer (R.232); that he last worked on July 21, 2004 (R.233) and that he is receiving a steel workers disability pension (R.232).

The plaintiff also testified that he experiences extreme fatigue, shortness of breath and pain (R.240); that he takes medication for his thyroid and for pain (R.239); that he suffers from sleep apnea (R.250); that he can walk about 100 feet and sit for about two to three hours (R.238, 241); that he can stand for twenty to thirty minutes (R.241); that he can lift a gallon of milk (R.241); that he naps during the day (R.245) and that he can tend to his personal needs (R.242).

At the hearing a vocational expert was called upon to testify (R.254-257). He testified that the plaintiff's prior work was medium exertional and semi-skilled in demands (R.254). The witness was asked to assume an individual of the plaintiff's age, education and prior work experience who was restricted to light work in a relatively clean air environment with occasional standing, and testified that there were a large number of jobs such an individual could perform (R.255). However, he also testified that if the individual experienced excessive absences or required too many work breaks, he could not be employed (R.256).

The issue before the Court for immediate resolution is a determination of whether or not there is substantial evidence to support the findings of the Commissioner that the plaintiff was not disabled within the meaning of the Act.

The term "disability" is defined in 42 U.S.C. Section 423(d)(1)(A) as:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months....

For purposes of the foregoing, the requirements for a disability determination are provided in 42 U.S.C. Section 423(d)(2)(A):

An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence ... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. Section 423(d)(3). These provisions are also applied for purposes of establishing a period of disability. 42 U.S.C. Section 416(i)(2)(A).

While these statutory provisions have been regarded as "very harsh," nevertheless, they must be followed by the courts. NLRB v. Staiman Brothers, 466 F.2d 564 (3d Cir. 1972); Choratch v. Finch, 438 F.2d 342 (3d Cir. 1971); Woods v. Finch, 428 F.2d 469 (3d Cir. 1970). Thus, it must be determined whether or not there is substantial evidence in the record to support the conclusion of the Commissioner that the plaintiff was not disabled within the meaning of the Social Security Act.

For this purpose, certain medical evidence was reviewed.

The plaintiff was treated at King-Maceyko Dermatology between September 20, 1995 and November 10, 2003 for basal cell carcinomas (R.106-109).

On December 10, 2003, Dr. David Buerger provided reconstructive surgery for repair of the plaintiff's basal cell carcinoma (R.110).

4

The plaintiff was treated by Dr. Imran M. Baja between March 4, 2003 and July 21, 2004 for restrictive pulmonary disease and mild sleep apnea. The plaintiff's respiratory problem was described as moderate obstructive and restrictive lung disease (R.111-135).

The plaintiff had an eye examination on August 4, 2004 (R.136-141).

The plaintiff was treated by Dr. Charles H. Srodes between August 10, 2004 and August 17, 2004 and cholesterol lowering medication was recommended (R.142-147).

The plaintiff was treated by Andrew Cash, D.O. between December 4, 2003 and August 30, 2004 for dermatophytosis (R.148-156).

After reviewing the medical evidence and in a residual functional capacity assessment completed on October 5, 2004, it is noted that the plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, and stand, walk or sit for about six hours (R.161-169).

The plaintiff was treated by Dr. Floyd Casaday between September 14, 2004 and September 22, 2004. A Holter monitor was provided which revealed ventricular and supra ventricular ectopic contractions (R.157-160).

The plaintiff had a negative stress test on September 29, 2004 (R.199-200).

The plaintiff was treated by Dr. Ravi Nadarajah between October 4, 2004 and November 1, 2004 for blurred vision which was related to possible bilateral maxillary sinus disease (R.203-213).

In a report of a consultation on February 21, 2005, Gregg W. Wilson, D.M.D. reported discussing possible treatment for sleep apnea with the plaintiff (R.170-171).

The notes of Dr. James D. Nesper report a visit on February 21, 2005 for obstructive sleep apnea (R.218-221).

The plaintiff was treated by Dr. Steven B. Gelfand between March 15, 2005 and April 20, 2005 for possible ophthalmic migraines. All neurological tests were negative (R.172-177).

The plaintiff was treated by Dr. Charles H. Srodes between August 10, 2004 and May 10, 2005 and it was noted that the plaintiff "has been able to work but has significant fatigue." The doctor also stated that the plaintiff had multiple medical problems and supported his application for disability benefits (R.214-216).

In response to an inquiry by the plaintiff's employer, on May 19, 2005, Dr. Imran Bajwa reported that as a result of restrictive lung disease, asthma and sleep apnea the plaintiff could not continue his employ at Timken Latrobe Steel (R.217).

The plaintiff was treated by Dr. Imran Baja between November 14, 2004 and May 20, 2005 for shortness of breath and sleep apnea (R.178-185).

The plaintiff was treated by Andrew D. Cash, D.O. between October 6, 2004 and May 26, 2005 for hypothyroidism (R.186-198).

In reviewing a disability claim, in addition to considering the medical and vocational evidence, the Commissioner must consider subjective symptoms. Baerga v. Richardson, 500 F.2d 309 (3d Cir. 1974). As the court stated in Bittel v. Richardson, 441 F.2d 1193, 1195 (3d Cir. 1971):

> Symptoms which are real to the claimant, although unaccompanied by objective medical data, may support a claim for disability benefits, providing, of course, the claimant satisfies the requisite burden of proof.

In Good v. Weinberger, 389 F. Supp. 350, 353 (W.D. Pa. 1975), the Court stated:

> Bittel seeks to help those claimants with cases that so often fall within the spirit-- but not the letter--of the Act. That plaintiff did not satisfy the factfinder in this regard, so long as proper criteria were used, is not for us to question.

The applicable regulations require more explicit findings concerning the various vocational facts which the Act requires to be considered in making findings of disability in some cases. The regulations, published at 20 C.F.R. §§404.1501, et seq., set forth an orderly and logical sequential process for evaluating all disability claims. In this sequence, the Administrative Law Judge must first decide whether the plaintiff is engaging in substantial gainful activity. If not, then the severity of the plaintiff's impairment must be considered. If the impairment is severe, then it must be determined whether he meets or equals the "Listings of Impairments" in Appendix 1 of the Regulations which the Commissioner has deemed of sufficient severity to establish disability. If the impairment does not meet or equal the Listings, then it must be ascertained whether he can do his past relevant work. If not, then the residual functional capacity of the plaintiff must be ascertained, considering all the medical evidence in the file. The finding of residual functional capacity is the key to the remainder of findings under the new regulations. If the plaintiff's impairment is exertional only, (i.e. one which limits the strength he can exert in engaging in work activity), and if his impairment enables him to do sustained work of a sedentary, light or medium nature, and the findings of age, education and work experience, made by the Administrative Law Judge coincide precisely with one of the rules set forth in Appendix 2 to the regulations, an appropriate finding is made. If the facts of the specific case do not coincide with the parameters of one of the rules, or if the plaintiff has mixed exertional and non-exertional impairments, then the rules in Appendix 2 are used as guidelines in assisting the Administrative Law Judge to properly weigh all relevant medical and vocational facts.

Based on the evidence presented, the Commissioner concluded:

The evidence supports a finding that the claimant has obstructive sleep apnea, pulmonary fibrosis, coronary artery disease, blurred vision, hypothyroidism, restrictive lung disease, and history of Hodgkin's disease, impairments which are medically determinable, impose limitations with more than a minimal effect on his ability to do basic work, and have lasted 12 continuous months or more.  Thus, these impairments are "severe"

\* \* \*

The record does not show the claimant's vision in his better eye after best correction is 20/200 or less, thereby preventing the meeting of Listing 2.02.

The record does not show that the claimant has chronic obstructive pulmonary disease involving an FEV equal to or less than the corresponding value in table I of Listing 3.02...

The record does not show that the claimant has chronic restrictive ventilatory disease involving an FVC equal to or less than the corresponding values in table II of Listing 3.02...

The record does not show that the claimant has a sleep-related breathing disorder which when evaluated under the criteria of Listing 3.09 or Listing 12.02 meets the requirements of Listing 3.10.

The record does not show that the claimant has chronic heart failure after a regimen of prescribed treatment with cardiac enlargement required by Listing 4.02A with inability to carry on any physical activity and symptoms of inadequate cardiac output, pulmonary congestion, systemic congestion, or anginal syndrome at rest...

The record does not show that the claimant has a thyroid disorder which meets the requirements of Listing 9.02 ...

The record does not show that the claimant's condition involves lymphoma excluding T-cell lymphoblastic lymphoma; or Non-Hodgkin's lymphoma ... or Hodgkin's disease with failure to achieve clinically complete remission.

\* \* \*

The medical evidence shows the claimant has obstructive sleep apnea, pulmonary fibrosis and restrictive lung disease...

The medical evidence shows the claimant has coronary artery disease... Dr. Gelfand reported the claimant had valvular disease secondary to radiation and chemotherapy.

The medical evidence shows the claimant has hypothyroidism...

The medical evidence shows the claimant has a history of Hodgkin's Disease.

Medical examiners reported the claimant reported he had blurred vision [with no significant negative findings]...

Significantly, medical examiners who examined the claimant reported findings inconsistent with the claimant's alleged limitations.

\* \* \*

The claimant's activities of daily living, along with the clinical and objective findings, are inconsistent with an individual experiencing totally debilitating symptomatology. Instead the record shows normal peripheral pulses, no neurologic deficit, normal neck range of motion, normal reflexes except for decreased ankle and knee jerks... normal sensation, normal gait, heel and toe walking ability, no motor deficit, normal muscle tone and bulk, clear lungs, no wheezes except for a faint inspiratory wheeze on August 10, 2004, no rales, no rhonchi, regular heart rate and rhythm, no rubs, no gallops and no edema.

\* \* \*

Based on the foregoing, the undersigned finds the claimant retains the residual functional capacity to perform the exertional demands of light work, with certain modifications.

\* \* \*

In view of all the foregoing, it is apparent the claimant cannot perform the duties associated with his past relevant job of steelworker.

\* \* \*

The undersigned concludes the claimant can engage in those jobs identified by the vocational expert...

For the foregoing reasons the undersigned concludes the claimant retains the capacity to adjust to work which exists in significant numbers in the national

economy. Because the claimant is capable of making an adjustment to other work, he is not disabled within the meaning of the Social Security Act (R.17-24).

The record demonstrates that although the plaintiff suffers from a broad range of ailments, none of them, either individually or in combination prevent him from engaging ins substantial gainful employ. Rather, as the Commissioner concluded, there are a wide range of jobs he could engage in even when considering a restricted work environment.

Summary judgment is appropriate when there are no disputed material issues of fact, and the movant is entitled to judgment as a matter of law. Biener v. Calio, 361F.3d 206 (3d Cir. 2004). In the instant case, there are no material factual issues in dispute, and it appears that the Commissioner's conclusion is supported by substantial evidence. For this reason, it is recommended that the plaintiff's motion for summary judgment be denied; that the defendant's motion for summary judgment be granted; that the decision of the Commissioner be affirmed and that judgment be entered accordingly.

Within thirteen (13) days after being served with a copy, any party may serve and file written objections to the report and recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

Respectfully submitted,

s/ROBERT C. MITCHELL,
United States Magistrate Judge

Dated: November 6, 2007